J-S09042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: I.P., MOTHER | : | |
| | : | |
| | : | No. 3041 EDA 2023 |

Appeal from the Decree Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000179-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: I.P., MOTHER | : | |
| | : | |
| | : | No. 3042 EDA 2023 |

Appeal from the Decree Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000180-2023

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED APRIL 22, 2024**

I.P. ("Mother") appeals from the decrees entered by the Philadelphia County Court of Common Pleas terminating her parental rights to S.K., born April 2018, and S.J.K., born March 2019 (collectively "Children"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Because we conclude that the

orphans' court did not abuse its discretion in terminating Mother's parental rights, we affirm.

In July 2018, the Philadelphia Department of Human Services ("DHS") received a General Protective Services report regarding a domestic violence incident that occurred in Mother's home. N.T., 10/12/2023, at 6. The report alleged that A.K. ("Father") hit, bit, and strangled Mother (who was pregnant at the time with S.J.K), hit S.K. (who was then three months old), and that Mother stabbed Father. *Id.* at 6-7. Father has remained incarcerated since his arrest for this incident. *Id.* at 9. On August 31, 2018, S.K. was adjudicated dependent based on the present inability of his parents to provide proper parental care and control. *Id.*; *see also* Order of Adjudication and Disposition, 8/31/2018. S.K. remained in Mother's care at that time with court-ordered supplemental services. *See* Order of Adjudication and Disposition, 8/31/2018.

S.J.K. was born in March 2019. N.T., 10/12/2023, at 58. On December 23, 2019, DHS obtained orders of protective custody for Children after S.J.K. suffered severe burns while Mother was bathing her. *Id.* at 59; *see also* Shelter Care Orders, 12/23/2023. On February 4, 2020, S.J.K. was adjudicated dependent based on the present inability of her parents to provide proper parental care and control. N.T., 10/12/2023, at 58; *see also* Order of Adjudication and Disposition, 2/4/2020. Children were reunited with Mother in the spring of 2020. N.T., 10/12/2023, at 59.

In July 2021, Mother informed DHS that she was struggling with housing and meeting Children's needs. *Id.* at 59. Mother told the Community Umbrella Agency ("CUA") case manager that she could not currently care for Children and that she wanted them to stay with her mother ("Maternal Grandmother"). *Id.* On August 1, 2021, there was a domestic violence incident with Mother's then-paramour, which resulted in Mother's hospitalization. *Id.* Children were subsequently placed in kinship care with Maternal Grandmother. *Id.* at 59-60. On September 8, 2021, the juvenile court ordered Children committed to DHS and that Mother be permitted supervised visits at the agency. Permanency Review Orders, 9/8/2021. Children have remained in DHS custody continuously since September 8, 2021. N.T., 10/12/2023, at 59-60.

Throughout the life of this case, Mother's single case plan ("SCP") objectives were to attend domestic violence counseling; complete a Parenting Capacity Evaluation ("PCE"); attend individual therapy until otherwise determined by her therapist; comply with the safety plan related to the paramour that hospitalized her; understand and attain care for Children's behavioral and mental health issues; and obtain and maintain employment and housing. *Id.* at 61-67. Mother has only partially complied with her SCP objectives. *See id.*

On May 5, 2023, DHS filed a petition to involuntary terminate Mother's parental rights to Children.[1] The orphans' court held a hearing on the petition on October 12, 2023. On November 30, 2023, the orphans' court issued decrees involuntarily terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), and finding, pursuant to 23 Pa.C.S. § 2511(b), that termination best serves the developmental, physical, and emotional needs and welfare of Children. Orphans' Court Order, 11/30/2023, at 1. Mother timely appealed to this Court and filed a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement.

Mother presents the following issues for review:

1. Whether the [orphans'] court erred and/or abused its discretion by terminating the parental rights of Mother, I.P.[,] pursuant to 23 Pa.C.S.[ §] 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties.

2. Whether the [orphans'] court erred and/or abused its discretion by terminating the parental rights of Mother, I.P.[,] pursuant to 23 Pa.C.S.[ §] 2511(a)(2) where Mother presented evidence that she has remedied her situation by maintaining housing, taking domestic violence classes, having mental health treatment and working and has the present capacity to care for her children.

---

[1] On May 8, 2023, Mother signed voluntary relinquishment of parental rights petitions. N.T., 10/12/2023, at 50. At the termination hearing, however, both Mother and Maternal Grandmother testified that Mother's relinquishment of her parental rights was not voluntary. *Id*. at 50-56. Mother stated that she was told if she did not sign away her rights to Children that her youngest child would be taken from her. *Id*. at 56. Consequently, the orphans' court did not accept the petitions. *Id.*

3.    Whether the [orphans'] court erred and/or abused its discretion by terminating the parental rights of Mother, I.P.[,] pursuant to 23 Pa.C.S.[ §] 2511 (a)(5) where evidence was provided to establish that the children were originally placed with their grandmother under a safety plan and Mother is now capable of caring for her children.

4.    Whether the [orphans'] court erred and/or abused its discretion by terminating the parental rights of Mother, I.P.[,] pursuant to 23 Pa.C.S.[ §] 2511 (a)(8) where evidence was presented to show that Mother is now capable of caring for her children after she completed parenting and domestic violence classes, maintained housing and received mental health treatment and is employed.

5.    Whether the [orphans'] court erred and/or abused its discretion by terminating the parental rights of Mother, I.P.[,] pursuant to 23 Pa.C.S.[ §] 2511(b) where evidence was presented that [M]other and her children had a strong parental bond and the children's wishes with respect to adoption were never ascertained to determine if the children would suffer any irreparable harm.

Mother's Brief at 7.

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus,

absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a bifurcated analysis. *See id.* at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and convincing evidence, the court then must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (en banc) (quotation marks and citations omitted).

As stated above, the orphans' court terminated Mother's rights to Children pursuant to subsections (1), (2), (5), and (8) of section 2511(a).

Orphans' Court Opinion, 2/7/2024, at 8. "This Court may affirm the [orphans'] court's decision regarding the termination of parental rights with regard to any one subsection of [s]ection 2511(a)." *In re J.F.M.*, 71 A.3d 989, 992 (Pa. Super. 2013). We focus our analysis on section 2511(a)(8).

Mother argues that the orphans' court abused its discretion by terminating her parental rights pursuant to section 2511(a)(8) on the basis that she failed to comply with several of her SCP objectives, baldly asserting that she has complied with all objectives. Mother's Brief at 19-20. Mother claims that she "completed a parenting course and a domestic violence course, and attended mental health treatment." *Id.* Mother further asserts that she has employment and housing that is sufficient to allow her to care for her children. *Id.* at 20.

To terminate parental rights under section 2511(a)(8), the petitioner must prove: (1) the child has been removed from parental care for 12 months or more; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008); *see also* 23 Pa.C.S. § 2511(a)(8). Notably, this subsection "does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children." *Interest of M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022). Rather, "the relevant inquiry regarding the second prong of [section] 2511(a)(8) is whether the conditions that led to

- 7 -

removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***Id.*** (quotation marks and brackets omitted).

The orphans' court provided the following explanation for its decision to terminate Mother's parental rights under section 2511(a)(8):

> In the instant case, this [c]ourt determined that DHS satisfied the requirements of [section 2511(a)(8)]. Children have been in care for over two years. N.T., 10/12/2023 at 59. Children were adjudicated dependent due to Mother's ongoing domestic issues and Mother's inability to care for [C]hildren. ***Id.*** Following the adjudication, Mother was ordered to … complete domestic violence counseling, complete the PCE, continue to attend individual therapy, comply with the … [s]afety [p]lan, obtain and maintain housing, and ensure that the [C]hildren are up to date with their medical … care. ***Id.*** at 61[.] Mother's housing is unstable due to the past due balance of $3,000.00 in rent arrears. [***Id.***] In over two years' time, Mother has made little effort to complete these objectives and has not re-established a parental bond with Children. Of her several objectives, Mother presented evidence of successfully completing two objectives—[the PCE] and domestic violence counseling. ***Id.*** at 63-64, 66. Although evidence was presented that Mother was once active in a mental health treatment program, there is no evidence of completion. ***Id.*** at 67. Additionally, Mother has failed to maintain employment. ***Id.*** at 61. Most significantly, Mother has not addressed or remedied the concerns which brought [Children] into care which presents a concern regarding her ability to safely parent [Children] on a full-time basis.
>
> As a result, this [c]ourt believes that Mother will not remedy the conditions which led to the placement of Children. The evidence clearly established that termination would be in the best interest and welfare of Children as they are well-adjusted in their pre-adoptive home and have a strong bond with her kinship parent. ***Id.*** at 17-18.

Orphans' Court Opinion, 2/7/2024, at 13-14.

Our review of the record supports the orphans' court's conclusions. The record reflects, and Mother does not dispute, Children have been in care for more than twelve months. The Children were removed from Mother's care because of ongoing domestic abuse issues and Mother's inability to provide for Children's basic care and safety. N.T., 10/12/2023, at 59. Children have been in the care of Maternal Grandmother for over two years. *Id.* Following adjudication, Mother, according to her SCP objectives, was to complete a PCE, attend domestic violence counseling, attend individual mental health therapy, comply with the safety plan for the paramour that caused her hospitalization in 2021, obtain and maintain suitable housing and employment, and ensure that Children received appropriate medical and mental health care. *Id.* at 60-66, DHS Exhibit 5.

The record reveals, however, that Mother completed only some of her SCP objectives—the PCE and domestic violence counseling. N.T., 10/12/2023, at 63-64. Although Mother stated that she at one time had intermittently participated in mental health therapy, the record contains no evidence that she is currently in therapy, has been discharged from therapy, or that she has made any progress toward achieving this objective. *Id.* at 62, 67, 72. Additionally, Mother does not have stable housing. *Id.* at 61. Although Mother had housing at the time of the hearing, she failed to provide any evidence that she has been able to maintain steady employment; to the contrary, the record reflects that her rent at the time of the hearing was

$3,000.00 in arrears and she was at risk for eviction. *Id.* Lastly, although Mother completed domestic violence counseling, Mother still has contact with the paramour who caused her hospitalization in 2021, admitting at the termination hearing that she last saw him in June 2023. *Id.* at 63-64, 66, 73.

Thus, the record supports a finding that Mother largely has not addressed, let alone remedied, the concerns that resulted in Children's removal from her care—namely her ability to safely parent and care for Children, and to provide them with a stable living environment. The record therefore supports the orphans' court's conclusion that there was clear and convincing evidence that termination would meet the needs and welfare of Children. Based on the foregoing, we conclude that the orphans' court did not commit an error of law or abuse its discretion when it concluded DHS proved grounds to terminate Mother's rights under section 2511(a)(8).

We next consider whether the record supports the orphans' court's conclusion that there was clear and convincing evidence to terminate Mother's rights pursuant to section 2511(b). Mother argues that the orphans' court erred in terminating her parental rights under section 2511(b), baldly asserting that the orphans' court failed to consider the emotional and developmental needs of Children.[2] Mother's Brief at 20.

---

[2] Mother also argues that the orphans' court improperly denied Children legal representation. *See* Mother's Brief at 21. Mother, however, did not raise this issue before the orphans' court or in her Rule 1925(b) statement.
*(Footnote Continued Next Page)*

Section 2511(b) provides:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Under section 2511(b), we focus on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  **In re T.S.M.**, 71 A.3d at 267.  "[T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child.  The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond."  **Id.** (quotation marks omitted).

---

Nonetheless, our Supreme Court has mandated that we review this issue sua sponte.  **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1235 (Pa. 2020) (stating that "where an orphans' court has appointed a [guardian ad litem]/[c]ounsel to represent both the child's best interests and legal interests, appellate courts should review sua sponte whether the orphans' court made a determination that those interests did not conflict").  In this case, Children were appointed an individual who served as both guardian ad litem and legal counsel.  **See** N.T., 10/12/2023, at 3.  The orphans' court expressly determined that no separate termination counsel was necessary.  **See** Permanency Review Order, 7/20/2023.  Thus, Mother's claim is not supported by the record.

Additionally, our Supreme Court has further explained that "the parental bond is but one part of the overall subsection (b) analysis[.]" *Interest of K.T.*, 296 A.3d 1085, 1113 (Pa. 2023). The section 2511(b) analysis must also include the consideration of factors such as: "the child's need for permanency and length of time in foster care …; whether the child is in a preadoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *Id.* (citations omitted). "These factors and others properly guide the court's analysis of the child's welfare and all [their] developmental, physical, and emotional needs." *Id.* Importantly, "[orphans'] courts have the discretion to place appropriate weight on each factor present in the record before making a decision regarding termination that best serves the child's specific needs." *Id.*

With respect to its decision under section 2511(b), the orphans' court explained:

> In the instant matter, this [c]ourt determined [] Children would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that [] Children would not suffer harm if Mother's parental rights were terminated[,] and that Children were significantly bonded with their kinship caregiver who is also their maternal grandmother. Children refer to their kinship caregiver as "G-mom" and look to her for care, support, and protection. The kinship caregiver is also a great advocate for [Children] and their services, and ensures that both [C]hildren receive all of their services. The testimony demonstrated that [Maternal Grandmother] meets all of their educational, medical, and emotional needs. The CUA case

- 12 -

manager classified the bond between the kinship caregiver and [Children] as a parent-child bond. CUA believes adoption is Children's best interest because reunification is not a viable option and does not believe either child will suffer irreparable harm if Mother's parental rights were terminated. In determining that termination would best serve the needs and welfare of [C]hildren, this [c]ourt considered that Mother has not been able to meet [C]hildren's emotional, physical, and developmental needs for over two years prior to the termination hearing.

Orphans' Court Opinion, 2/7/2024, at 15 (record citations omitted).

The record reflects that Children, who have been in the care of Maternal Grandmother for over two years, have significant mental health and behavioral challenges that have required both inpatient and outpatient mental health treatment. N.T. 10/12/2023 at 59, 84. Specifically, both children are autistic, have been diagnosed with attention-deficit/hyperactivity disorder, and have been expelled from school and daycare. *Id.* at 78. At the time of the termination hearing, S.K. was receiving inpatient psychiatric services and medication while S.J.K. was receiving one-on-one therapy and medication management. *Id.* at 19. The record further reflects that Maternal Grandmother is the sole individual that has ensured that both children receive the mental health treatment that they require. *Id.* at 17, 68. Additionally, at the termination hearing, the CUA case manager classified the bond between Children and Maternal Grandmother as a parent-child bond. *Id.* at 68.

In contrast, at the termination hearing, Mother admitted that she did not know what kind mental health treatment Children received and she was unable to demonstrate any kind of understanding of what was necessary to

- 13 -

ensure Children received the necessary mental health care. *Id.* at 76-79. The CUA case manager testified that Mother has been inconsistent with her supervised visits with Children and, based on CUA's observations of Children and their interactions with Mother, that Children would not suffer irreparable harm if Mother lost her parental rights. *Id.* at 69, 70.

Based on the record before us and the standard of review we must employ, we discern no abuse of discretion in the orphans' court's conclusion that Children are bonded to Maternal Grandmother, that she best meets Children's needs and welfare, and that Children will not be irreparably harmed by terminating Mother's parental rights. Accordingly, we conclude that the orphans' court did not err in determining that Children's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. As the orphans' court's determination is supported by the record, we must affirm. *See C.M.*, 255 A.3d at 358-59.

Decrees affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2024